GP

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERISANT COMPANY<br>10 South Riverside Plaza<br>Chicago, IL 60606 | Civil Action No. 04-cv-5504 |
| Plaintiff, | |
| v. | |
| McNEIL NUTRITIONALS LLC<br>7050 Camp Hill Road<br>Fort Washington, Pa 19034 | **COMPLAINT** |
| Defendant, | |
| and | |
| McNEIL PPC-INC.<br>199 Grandview Road,<br>Skillman, New Jersey 08558-9418 | JURY TRIAL DEMANDED |
| Defendant. | |

1. In the advertising and on the packaging of its Splenda® brand artificial sweetener, McNeil makes claims that are not only literally false, but also mislead consumers into believing that Splenda contains actual sugar and is a natural product. In particular, in its aggressive campaign to sell Splenda, McNeil claims that Splenda is "made from sugar so it tastes like sugar" and uses the logo "made from SUGAR, tastes like SUGAR" in virtually all of its advertising. In reality, however, there is no sugar in Splenda and Splenda's sweet taste does not come from sugar. Moreover, Splenda is not natural in any sense of the word. Instead, the truth about Splenda is that it is sweetened with a synthetic compound that is the result of a complex chemical process.

2.	Despite the fact that it is selling an artificial sweetener, McNeil has designed a carefully-orchestrated campaign to mislead consumers and confuse the public into believing that Splenda is natural or contains sugar – both of which are absolutely false. Regrettably, McNeil's campaign has begun to take hold and recent reports show that consumers, and even health professionals, are being misled about the true nature of Splenda.

3.	McNeil's effort to mislead the public harms both consumers – who are making buying decisions based on incorrect information and beliefs – and other companies that make no effort to hide the truth about their products. One such company is Merisant, the maker of the well-known artificial sweeteners Equal® and Nutrasweet®.

4.	In an effort to address McNeil's false and misleading advertising directly and professionally, Merisant originally sought review of McNeil's Splenda advertising from the National Advertising Division ("NAD") of the Better Business Bureau – a well-respected alternative dispute resolution forum dedicated to and experienced in addressing false and misleading statements in advertising. Although McNeil has previously availed itself of the NAD's expertise when complaining of the advertisements of *others*, with respect to its own Splenda advertising, McNeil refused to allow the Better Business Bureau to even evaluate its campaign, much less did McNeil provide any support demonstrating that its Splenda campaign is truthful.

5.	To the contrary, McNeil attempted to preempt both the NAD from examining its advertising and Merisant from pursuing its claim in the forum of its choice by silently filing a lawsuit elsewhere asking that its campaign be declared not so misleading that it violates the law. Tellingly, McNeil did not file that suit here in Pennsylvania, where McNeil has its headquarters, conducts its business, and designed its misleading campaign. Rather, McNeil attempted to have

the accuracy of its ad campaign addressed some 1,500 miles away – outside of the fifty United States – in the island territory of Puerto Rico. Having forced its way out of the Better Business Bureau review of its campaign, McNeil's false and misleading advertising must now be addressed by this Court.

## PARTIES

6. Plaintiff, Merisant Company ("Merisant"), is organized under the laws of Delaware with its principal place of business at 10 South Riverside Plaza, Chicago, IL 60606. Merisant is a manufacturer of artificial sweeteners, including the Equal®, NutraSweet®, and Canderel® brands. Merisant respectfully alleges the facts and states the causes of action for its Complaint as set forth herein.

7. Defendant McNeil Nutritionals, LLC, is a Delaware limited liability company with its principal place of business in this district in Fort Washington, Pennsylvania. McNeil Nutritionals is currently the manufacturer of the artificial sweetener Splenda®.

8. Defendant McNeil-PPC, Inc. is a New Jersey corporation with a principal place of business in Skillman, New Jersey. McNeil-PPC has manufactured Splenda and is responsible for Splenda's false and misleading advertising campaign – acts which occurred at McNeil-PPC's facility in Fort Washington, Pennsylvania in this district. McNeil-PPC recently created a wholly-owned subsidiary, defendant McNeil Nutritionals, to have certain responsibilities for Splenda. McNeil Nutritionals and McNeil-PPC are collectively referred to hereafter as "McNeil."

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28

U.S.C. § 1391(b), as defendant McNeil resides in this district and the events and omissions by McNeil giving rise to the claims occurred here.

## FACTUAL BACKGROUND

### McNeil's False and Misleading Advertising Confuses Consumers Into Thinking Splenda Contains Real Sugar And Is Natural

10. McNeil manufactures and distributes an artificial sweetener marketed in interstate commerce under the brand name Splenda®.

11. To promote this artificial sweetener, McNeil created an entire advertising campaign designed to convey to consumers that Splenda – manufactured using the synthetic sweetening compound 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside ("sucralose") – is nothing more than real sugar without the calories. McNeil delivers that message consistently through statements, representations, and depictions on Splenda's packaging, in print, television, radio, Internet, and point of sale advertising, and in sales presentations and communications to individuals in the health and medical fields. These statements and representations are both literally and impliedly false and mislead consumers.

12. Specifically, McNeil's advertisements and packaging make frequent use of the Splenda "Sugar Logo," featuring the phrase "Made From SUGAR, Tastes Like SUGAR."



13. Splenda's Sugar Logo most prominently features the word "SUGAR," which appears in extra-large, bold font, as if stamped on a bag of raw, natural sugar. In fact, the word

4

"SUGAR" is the largest, most prominent feature of the entire Splenda package, other than the brand name Splenda itself.



14. McNeil also makes extensive use of the Splenda "Tagline," which claims that Splenda is "made from sugar *so it* tastes like sugar." This Tagline – which claims that Splenda's taste comes from sugar – appears throughout Splenda's advertising campaign, on each individual serving-sized packet of Splenda, and on Splenda's packaging as well.

15. These prominent and frequent uses of the word "sugar," coupled with McNeil's use of certain images and sugar slogans in its advertising and packaging, draw a false and misleading connection between Splenda and sugar – leading consumers to believe that Splenda is natural, and contains actual sugar.

**Splenda Does Not Contain Real Sugar – Nor Does Its Taste Come From Sugar**

16. McNeil's express claims in the Sugar Logo and Tagline, that Splenda is "Made From Sugar," and "tastes like sugar" *because it is* "made from sugar," are false and misleading.

17. As McNeil itself admits in the "Ingredients" portion of its packaging label, Splenda is not made from sugar. Splenda is made from "dextrose," "maltodextrin," and the synthetic sweetening compound 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside. McNeil and its affiliates prefer to use the consumer-oriented

5

name "sucralose" to refer to this synthetic chemical ingredient. Sucralose is *not* sugar, however, and pursuant to 21 C.F.R. § 184.1854 and other federal regulations, McNeil cannot and does not call it sugar – at least not in the tiny, highly-regulated "Ingredient" list on the side of the box.

18. In fact, McNeil cannot legally list sugar (sucrose) as an ingredient in Splenda because 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside (sucralose) is an entirely distinct chemical from sucrose that can be synthesized wholly *without* sugar. Significantly, McNeil and its partners have sought and obtained patent protection for dozens of different chemical processes for making "sucralose." In one of these patented processes, McNeil doesn't even start with or use sugar, but synthesizes sucralose from the chemical compound raffinose, which is naturally-occurring and found in beans and onions. Notably, raffinose does not even have a sweet taste.

19. Nonetheless, from whatever sucralose is synthesized – beans, onions, sugar, or otherwise – the resulting sucralose molecule is approximately 600 times sweeter than an equivalent weight of sugar. As a result, sucralose must be "cut" for consumer use by adding the bulking agent ingredients dextrose and maltodextrin. Otherwise, the taste of Splenda would not even approximate the taste of sugar.

20. Accordingly, the Tagline, "made from sugar so it tastes like sugar," is false. Splenda does not "taste like sugar" because it is possible to chemically breakdown sugar and add chlorine as one of the ways to create sucralose. As McNeil's patented use of beans or onions to make sucralose illustrates, there is no scientific connection between the starting point of McNeil's chemical process and the ultimate taste of sucralose. Instead, sucralose's unique taste depends upon its own unique chemical structure. Whether synthesized from raffinose

(beans/onions), sucrose (sugar), or otherwise – the chemical compound known as sucralose will always taste the same.

**Splenda Is Not Natural, But Is Generated Through a Complex Chemical Process**

21.  Furthermore, although McNeil focuses its entire Splenda advertising campaign on conveying to consumers that Splenda is nothing more than real sugar without the calories – and, thus, natural – that message is false. Contrary to the carefully orchestrated message that consumers take away from the Splenda advertising campaign, Splenda is far from natural.

22.  Critically, 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside (sucralose) is not natural.

23.  Rather, in creating 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside, McNeil's scientists remove hydrogen and oxygen from a sucrose or raffinose molecule, then use phosgene, sulfuryl chloride, or other chlorine gases to add three atoms of chlorine to the remaining structure, producing an entirely new chemical compound. This process is quite complex and it is far from being natural in any sense. Indeed, the process is so *un*natural that McNeil has sought and received patents on the complicated chemistry needed to synthesize the chemical compound sucralose (a compound which was itself, until recently, covered by patents of McNeil and associates).

> All of the compounds of the general formula (I), both new and old, may be prepared by reaction of a sucrose ester, having free hydroxy groups in the portions required to be chlorinated, with sulphuryl chloride to obtain the corresponding chlorosulphate derivative. This, on treatment with a source of chloride ions such as lithium chloride, in an amide solvent such as hexamethyl phosphoric triamide, yields the chlorinated sucrose ester. Hydrolysis of the chloro-ester, e.g. using sodium methoxide in dry methanol, then liberates the free chlorosucrose. The reaction with sulphuryl chloride is conveniently effected at a reduced temperature in an inert solvent in the presence of a base, for example, chloroform containing pyridine.

*See, e.g.*, United States Patent No. 4,435,440 at col. 4, ll. 23-36.

24. McNeil's current manufacturing process for Splenda uses the chemical phosgene as the chlorine gas to synthesize 4-chloro-4-deoxy-α-D-galactopyranosyl-1,6dichloro-1,6-dideoxy-β-D-fructofuranoside. This process is detailed by McNeil and its associates' patent filings (*see* United States Patent No. 4,980,463 at col. 4, ll. 1-38) and confirmed by filings McNeil is required to make with the EPA under federal law due to its use and output of the toxic chemical phosgene during its Splenda manufacturing process. *See, e.g.*, http://oaspub.epa.gov/enviro/tri_formr_partone.get_thisone?rpt_year=2002&dcn_num=1302200 022679. Phosgene is a poisonous gas described by the Centers for Disease Control as a major industrial chemical used to make plastics and pesticides. *See, e.g.*, http://www.bt.cdc.gov/agent/phosgene/basics/facts.asp.

25. While the operation of a plant using large quantities of phosgene does not make Splenda itself inherently dangerous to consumers, McNeil's use of phosgene as a key component in the synthesis of sucralose underscores one simple fact: Splenda is quite far from natural.

8

## The False Splenda Sugar Logo, Tagline, and McNeil Advertising Campaign For Splenda Are Misleading Consumers

26. There is no compelling business justification for McNeil's use of the Sugar Logo and Tagline in its advertisements and packaging – particularly because they mislead the American public, as McNeil knows. Tellingly, McNeil carefully avoids (likely due to concern over stricter enforcement of its inaccurate statements) making such false and misleading statements in other countries where it sells Splenda, such as the United Kingdom and Canada. For instance, McNeil's British and Canadian packages do not use the same false and misleading Sugar Logo or Tagline, nor does McNeil use the misleading "made from sugar" phrase on its Canadian package.

27. Moreover, McNeil actually encourages the confusion engendered by these sugar representations through the images and slogans of its advertising campaign – actively seeking to bolster the false association between Splenda and sugar in consumers' minds. For instance, McNeil's current campaign includes print ads and television spots containing the slogan, "Think sugar, say Splenda." McNeil's print and TV ads also incorporate common "sugar" phrases that replace the word "sugar" with "Splenda," *e.g.*, "Splenda and spice and everything nice" (print and TV), "Roses are red, violets are blue, Splenda is sweet, and so are you" (print and TV), and "Sweet as Splenda" (print). McNeil's advertising implies to consumers that Splenda contains real sugar – which it does not.

28. Just as important, *all* of McNeil's ads capitalize and focus on images of children, which coupled with other claims in the Splenda ads and on the Splenda packaging (such as "Ideal for the whole family," "Now the whole family can enjoy great taste without the calories," "Splenda is making life a little sweeter for everyone," "Splenda is a very good reason to do something sweet for the ones you love," "What are little girls made of? Splenda and spice..."),

9

improperly suggests to consumers that Splenda's supposed sugar connection makes Splenda a better, *i.e.*, more natural, product for children (as well as adults) than other artificial sweeteners.

### Consumers and Merisant Have Been and Continue to Be Injured By McNeil's Misrepresentations

29. McNeil's false and misleading representations about Splenda are now injuring consumers and competitors alike. In a society where organic and chemical-free food products are increasingly popular, it is undeniable that many consumers purchase Splenda based on the mistaken belief that it is a natural product or that it contains sugar. Such actual consumer confusion has become evident with the launch of Splenda's recent advertising campaign, and this misunderstanding is now widespread.

30. Further reflecting this disturbing trend, the impact of McNeil's deceptive messaging now extends beyond average consumers, and is powerful enough to mislead doctors, nutritionists, and other industry personnel and health professionals.

31. For example, on February 16, 2004, the Philadelphia Inquirer published an article titled "Ask Dr. H. – Effects of Too Much Saccharin," wherein Dr. Mitchell Hecht, a physician specializing in internal medicine, advised the mother of a saccharin-user, "Perhaps [your daughter] might consider Equal/Nutrasweet or *the natural low-calorie sweetener* Splenda."

32. In a December 25, 2003 column that appeared in The Sun Herald (Biloxi, MS), Ken Hoffman, a syndicated food columnist, reported to his readers that he was attempting a low-carbohydrate diet. He recommended CarbSmart low-carbohydrate ice cream from Breyers, explaining that it uses "Splenda, *a natural*, nonnutritive sweetener."

33. In a 2003 online question and answer session with Dr. Arthur Agatston, the well-known cardiologist and author of the South Beach Diet, a consumer posed the question "I'm a little concerned about Splenda because other 'no sugar' sweeteners ended up having a chemical

10

that was not good, does Splenda have anything that would be harmful?" Dr. Agaston replied that "*Splenda is natural.*"

34. On August 6, 2004, Internet Broadcasting Systems published an article titled "Is Sugar Substitute Right for You? Splenda May be Healthiest Substitute Choice." In the article, which was both published online and broadcast on local television stations across the country, Debra Hayes, a dietician at the University Hospital in Cleveland, stated that Splenda is considered better because it is *more natural* than other sweeteners, which are made of artificial chemicals.

35. A recent (June 2004) publication analyzing the sugar and sweetener industry by Mintel – a respected supplier of competitive media, product and consumer intelligence – went so far as to characterize Splenda as a "natural product" somehow belonging in its own unique class of artificial sweeteners. Mintel recognized the actual confusion in the marketplace, and then added some of its own: "Sucralose, *a form of sugar* that does not get digested, has surpassed all other non-sugar sweeteners in popularity, in part because the product is *perceived as healthier than artificial sweeteners*" and "Splenda… [is] a *natural alternative* to artificial sweeteners."

36. Given the effort behind, and consistent 'sugar' message of, McNeil's deceptive campaign, it is not surprising that McNeil has even misled health and medical professionals into believing Splenda is natural. Indeed, in a brochure that McNeil distributed to health care professionals in the summer of 2004, McNeil itself expressly used the word "natural" to misleadingly describe the process by which McNeil synthesizes sucralose for Splenda. McNeil stressed that – notwithstanding its complex chemical process using phosgene for chlorination – "chlorine is a *natural* element present in many of the foods and beverages that we eat and drink every day." McNeil made similar representations on its website, where it also refers to the

11

"bulking ingredients, dextrose and/or maltodextrin," as "natural food ingredients." All of these references are disingenuous, to say the least, and are part of McNeil's calculated effort to reinforce and support the "natural" misimpressions surrounding Splenda.

37. Besides consumers and health professionals, McNeil's false and misleading claims are also damaging competitors such as Merisant – who are suffering lost and wrongfully diverted sales caused by McNeil's deceptions. Again, as Mintel noted in the same June 2004 report, because "non-sugar sweeteners ... are chemically derived ... public perception may have created a climate that aids the rapid growth in popularity of sucralose, *which is touted as being ... 'natural' ... .*" Moreover, "the increase in sugar and sucralose usage and the decline in non-sugar sweetener usages indicate that respondents [to the Simmons NCS survey] *are turning away from artificial products and are using 'real' sweeteners (either sugar or sucralose*, which is made from sugar.)"

## Merisant Sought to Have McNeil's Advertising Reviewed by the Better Business Bureau, but McNeil Refused to Participate

38. In response to McNeil's false and misleading advertising for Splenda, Merisant filed a challenge to McNeil's advertising and packaging with the National Advertising Division (NAD) of the Better Business Bureau. Founded in 1971, the NAD is an industry self-regulatory body with a mission of reviewing national advertising for truthfulness and accuracy to foster public confidence in the credibility of advertising.

39. Through this alternative dispute resolution system at the NAD, Merisant sought a professional and efficient evaluation of Splenda's advertising and resolution of this dispute. To that end, when McNeil's counsel sought an extension of time to answer Merisant's complaint to the NAD, Merisant courteously offered McNeil twice the normal time period to prepare its

response and to substantiate its claims. Moreover, NAD's process would have granted McNeil further opportunities to present arguments and evidence in the future.

40. Nonetheless, obviously aware of and, no doubt, concerned about the inaccuracies in its own Splenda advertising campaign, McNeil elected not to provide the NAD with any support for its claims or even respond to the evidence of consumer confusion provided by Merisant – evidence which the NAD deemed worthy of investigation. Instead, McNeil waited until the eve of the deadline for its first NAD submission and raced to a courthouse 1,500 miles away in the United States District Court for the District of Puerto to file a declaratory judgment action (without any notice to Merisant) so as to preempt Merisant's NAD complaint.

41. McNeil did so despite the fact that: (1) Merisant's NAD complaint regarding this dispute – before a well-respected body that both Merisant and McNeil have repeatedly used in the past for such advertising disputes – was first-filed; (2) all the witnesses and evidence relevant to McNeil's false and misleading advertising, indeed McNeil Nutritional's own headquarters, are located in Fort Washington, Pennsylvania in this judicial district; (3) the parties and this dispute have little connection to Puerto Rico – indeed many of McNeil's Splenda advertisements do not even run there; (4) McNeil's action is merely a declaratory judgment action filed to try to preempt Merisant's actual claims against McNeil; and (5) it is far more efficient and convenient for McNeil, Merisant, the witnesses, and the parties' counsel to litigate in this district.

### McNeil Cannot Support Its False Claims or Refute That Splenda's Advertising Is Misleading – It Therefore Seeks To Avoid Scrutiny In or Near This District

42. One reason that McNeil sought to avoid the administrative process provided by the Better Business Bureau is that the NAD demands advertisers act promptly to comply with high ethical standards for truthfulness – and the NAD consists of professionals skilled in spotting duplicitous statements. As such, McNeil would have been required to *substantiate* its false and

13

misleading advertising claims – a standard that McNeil knew it could not meet. Demonstrating its lack of support for its advertising claims, McNeil's own scientists concede – in technical journals far from McNeil's consumer claims – that any causal link between sucrose and the sweet taste of sucralose (namely, Splenda's Tagline "made from sugar *so it* tastes like sugar") is "***impossible to prove***." *See* S.D. Wiet & G.A. Miller, *Does chemical modification of tastants merely enhance their intrinsic taste qualities?*

43.     Moreover, McNeil's reason for the filing of its declaratory judgment action in Puerto Rico is equally clear. McNeil is attempting to forum shop this dispute, in bad faith, to a jurisdiction far away from both its actual business operations and the consumers it misleads.

44.     McNeil cannot directly contest the allegations that Splenda's advertising is misleading. Doing so would require McNeil to admit certain truths to consumers, including that: (i) Splenda is ***not*** natural; (ii) Splenda does ***not*** contain sugar; and (iii) Splenda's sweet taste is ***not*** caused by any connection to sugar. But such a public response would undermine the false and misleading advertising campaign that McNeil has carefully orchestrated and from which McNeil now seeks to derive an improper benefit. For that reason, McNeil is seeking to move this dispute to a remote and distant forum – an island territory some 1,500 miles from the scrutiny that might be expected in McNeil's home district.

45.     Unable to rebut (and unwilling to correct) the vast consumer confusion about the true nature of Splenda, McNeil believes that, regardless of how false or misleading Splenda's advertising is to the American public, it should be able to continue to mislead those consumers because there has been no earlier challenge regarding the falsity of its advertising. While indicative of McNeil's true desire – to continue to grow its Splenda brand by misleading consumers as to the nature of its product – McNeil's position is factually and legally inaccurate.

Due to McNeil's recent efforts and advertising, actual consumer confusion (including from the Sugar Logo and Tagline) has taken hold such that action is required to protect consumers of, and legitimate competitors in, artificial sweeteners.

46.     In light of the overwhelming factors favoring this forum, and McNeil's conduct in refusing to allow the Better Business Bureau to evaluate its advertisements, and sneaking off to try to preempt Merisant's complaint in a forum unrelated to this action, McNeil's filing of an anticipatory action in Puerto Rico is nothing more than a bad-faith attempt at forum shopping. Litigation of this dispute in this forum – McNeil's home district where all the events took place and players are to be found – is proper to address and put a stop to McNeil's false and misleading advertising.

## COUNT I – LANHAM ACT

### Splenda's Literal Claim That It Is "Made From Sugar" Is Both Literally False and Impliedly False

47.     Merisant incorporates by reference and repeats the allegations contained in paragraphs 1 through 46 of the Complaint.

48.     McNeil's advertising and packaging of Splenda with the phrase "Made From Sugar" is a false and misleading promotion of the nature, characteristics, ingredients, benefits, or qualities of goods in interstate commerce, in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125.

49.     This misleading advertising and packaging is material to consumer purchasing decisions, and has caused and is causing actual consumer confusion and damages to Merisant in an amount to be determined by jury at trial. Harm to consumers and Merisant will continue unless McNeil is restrained and enjoined from making false and misleading claims.

50. McNeil's false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

## COUNT II – LANHAM ACT

### Splenda's Claim That Is "Made From Sugar So It Tastes Like Sugar" Is Both Literally and Impliedly False

51. Merisant incorporates by reference and repeats the allegations contained in paragraphs 1 through 50 of the Complaint.

52. McNeil's advertising and packaging of Splenda with the Tagline "Made From Sugar So It Tastes Like Sugar" is a false and misleading promotion of the nature, characteristics, ingredients, benefits, or qualities of goods in interstate commerce, in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125.

53. This misleading advertising and packaging is material to consumer purchasing decisions, and has caused and is causing actual consumer confusion and damages to Merisant in an amount to be determined by jury at trial. Harm to consumers and Merisant will continue unless McNeil is restrained and enjoined from making false and misleading claims.

54. McNeil's false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

## COUNT III – LANHAM ACT

### Splenda's Implied Claim That It Is Natural Is False And Misleading

55. Merisant incorporates by reference and repeats the allegations contained in paragraphs 1 through 54 of the Complaint.

56. McNeil's advertising and packaging of Splenda, including use of the Splenda Sugar Logo and Tagline, in conjunction with its United States advertising campaign to imply Splenda is a natural product, is a false and misleading promotion of the nature, characteristics,

16

ingredients, benefits, or qualities of goods in interstate commerce in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125.

57. This misleading advertising and packaging is material to consumer purchasing decisions, and has caused and is causing actual consumer confusion and damages to Merisant in an amount to be determined by jury at trial. Harm to consumers and Merisant will continue unless McNeil is restrained and enjoined from making false and misleading claims.

58. McNeil's false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

## COUNT IV – LANHAM ACT

### Splenda's Implied Claim That It Contains Sugar Is False And Misleading

59. Merisant incorporates by reference and repeats the allegations contained in paragraphs 1 through 58 of the Complaint.

60. McNeil's advertising and packaging of Splenda, including use of the Splenda Tagline and Sugar Logo in conjunction with its United States advertising campaign to falsely imply that Splenda contains sugar, is a false and misleading promotion of the nature, characteristics, ingredients, benefits, or qualities of goods in interstate commerce in violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125.

61. This misleading advertising and packaging is material to consumer purchasing decisions, and has caused and is causing actual consumer confusion and damages to Merisant in an amount to be determined by jury at trial. Harm to consumers and Merisant will continue unless McNeil is restrained and enjoined from making false and misleading claims.

62. McNeil's false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

## COUNT V – UNFAIR COMPETITION

### Pennsylvania Common Law

63. Merisant incorporates by reference and repeats the allegations contained in paragraphs 1 through 62 of the Complaint.

64. McNeil's advertising and packaging of Splenda, including the use of the Splenda Sugar Logo and Tagline, is false and misleading is a false and misleading promotion of the nature, characteristics, ingredients, benefits, or qualities of goods in commerce.

65. The misleading advertising and packaging is material to consumer purchasing decisions, and has caused and is causing actual consumer confusion and damages to Merisant in violation of Pennsylvania laws of unfair competition. Harm to consumers and Merisant will continue unless McNeil is restrained and enjoined from making false and misleading claims.

66. McNeil's false and misleading statements are willful, with malicious and deceptive intent, making this an exceptional case.

### PRAYER FOR RELIEF

WHEREFORE, Merisant requests this Court:

(i) Permanently enjoin McNeil from using a logo, tagline, or statement on its Splenda product that is false and misleading, including but not limited to enjoining the use of the Sugar Logo and Tagline currently used by McNeil or any similar claims associating Splenda with sugar;

(ii) Order McNeil to institute a corrective advertising campaign, of comparable size and scope to its existing advertising campaign, clarifying that Splenda is not sugar or natural, but is an artificial sweetener utilizing a synthetic chemical, whose taste does not come from sugar;

(iii) Award compensatory damages to Merisant, including but not limited to damages for diverted sales and loss of goodwill and reputation (to the degree calculable);

(iv) Award treble and other available exemplary damages to Merisant, pursuant to 15 U.S.C. § 1117, based on McNeil's malicious, willful, and deliberate acts against consumers and Merisant;

(v)  Award Merisant all costs and expenses incurred by it in connection with the above-captioned action, including reasonable attorneys' fees and disbursements; and

(vi)  Provide any such further relief as this Court may deem just and proper.

                                     Respectfully submitted,

                                     */s/ Gregory B. Williams*

Abraham C. Reich, Attorney I.D. No. 20060
Gregory B. Williams, Attorney I.D. No. 76450
FOX ROTHSCHILD LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291
(215) 299-2000 (telephone)
(215) 299-2150 (fax)

Gregg F. LoCascio, Of Counsel
Karen M. Robinson, Of Counsel
Jonathan D. Brightbill, Attorney I.D. No. 88764
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW
Washington, D.C.  20005
(202) 879-5000 (telephone)
(202) 879-5200 (facsimile)

Attorneys for Plaintiff
MERISANT COMPANY

Dated:  November 26, 2004