UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――x
:
MERISANT COMPANY, :
:
Plaintiff, :
: Civil Action No. 04-cv-5504
v. :
: Judge Gene E.K. Pratter
McNEIL NUTRITIONALS, LLC and :
McNEIL-PPC, INC., :
:
Defendants. :
:
―――――――――――――――――――――x

**CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, STAY OR TRANSFER**

Defendants McNeil Nutritionals, LLC and McNeil-PPC, Inc. (collectively "McNeil") respectfully submit this Memorandum of Law in support of their motion to dismiss or stay this action or, in the alternative, to transfer it to another United Stated District Court where an earlier filed action involving the same parties and issues already is pending.  Such a dismissal, stay or transfer will serve the interests of judicial economy and comity among courts of equal rank, avoid the risk of inconsistent judgments arising from the same operative facts, and respect the original choice of forum for the adjudication of this dispute.

**Pertinent Background Facts**

McNeil markets Splenda®, the leading no-calorie sweetener in the United States.[1] Plaintiff Merisant Company ("Merisant") markets several competing no-calories sweeteners, including Equal®, NutraSweet®, and Same®.

―――――――――――――――――――
[1] Splenda is presently marketed by defendant McNeil Nutritionals, LLC.  McNeil-PPC, Inc., the other named defendant in this action, was the previous marketer of Splenda.  McNeil-PPC, Inc. transferred all assets related to the Splenda business to McNeil Nutritionals, LLC, a Delaware

1

Merisant commenced this action against McNeil on November 26, 2004, alleging that certain claims that appear on the packaging for Splenda, and in related advertising, are false and misleading in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125. More than a week earlier, however, McNeil had commenced an action against Merisant in the United States District Court for the District of Puerto Rico, seeking a declaratory judgment that these very claims are neither false nor misleading, and do not violate the Lanham Act. Under well-settled law in this Circuit, McNeil's first-filed action takes precedence, and this Court should not entertain Merisant's second-filed action.

Merisant's complaint in this case, attached hereto as Exhibit A, admits that McNeil filed its action before Merisant's, but alleges that McNeil's filing in Puerto Rico was somehow improper. According to Merisant, by commencing suit in Puerto Rico, "McNeil [was] attempting to forum shop this dispute, in bad faith, in a jurisdiction far away from both its actual business operations and the consumers who" use Splenda. Exh. A ¶ 43. Nothing could be further from the truth. In fact, at the time McNeil filed its declaratory judgment action, there was (and still is) pending in the District of Puerto Rico another Lanham Act case between the same parties involving claims substantially similar to those raised here. It was this co-pending case, mentioned nowhere in Merisant's pleading, that led McNeil to choose the forum that it did. The true facts that underlie McNeil's declaratory judgment action and require dismissal of Merisant's later-filed action are set forth below.

---

limited liability company, in June 2004. For brevity's sake, McNeil-PPC, Inc. and McNeil Nutritionals, LLC are collectively referred to herein as "McNeil."

**A.     The Trade Dress Action**

In December 2003, Merisant introduced for sale in Puerto Rico a new no-calorie sweetener in packaging that was shockingly similar to the packaging for McNeil's Splenda. A side-by-side photograph of Splenda and Merisant's copycat product, tellingly (albeit falsely) named "Same," appears below.



In February 2004, McNeil sued Merisant in the United States District Court for the District of Puerto Rico for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). McNeil's complaint sought an injunction to stop Merisant from marketing its new sweetener in the above package, or any packaging likely to cause consumer confusion between Merisant's product and McNeil's. McNeil's action, styled *McNeil-PPC, Inc. and Johnson & Johnson Hemisferica, S.A. v. Merisant Company and Merisant Puerto Rico, Inc.*, No. 04-1090 (JG) (the "Trade Dress Action"), was assigned to and is currently pending before the Hon. Jay A. Garcia-Gregory. A copy of McNeil's Complaint in the Trade Dress Action is attached hereto as Exhibit B.

3

On February 26, February 27, and March 2, 2004, Judge Garcia-Gregory conducted an evidentiary hearing on McNeil's motion for a preliminary injunction in the Trade Dress Action. During the hearing, the parties introduced extensive testimony and documentary evidence concerning, *inter alia*, the market for no-calorie sweeteners, the marketing history of Splenda, the design and appearance of the Splenda package, and consumer perceptions of the Splenda package. On March 3, 2004, counsel presented oral argument in support of and in opposition to the motion. A transcript of the evidentiary hearing and oral arguments is attached hereto as Exhibit C. Thereafter, at Judge Garcia-Gregory's request, the parties submitted detailed proposed findings of fact and conclusions of law.

McNeil's motion was granted. On July 29, 2004, Judge Garcia-Gregory entered an Order for Preliminary Injunction ("Order") restraining Merisant from "manufacturing, distributing, importing, advertising, marketing or selling a no-calorie sweetener in packaging that is confusingly similar to any packaging used by plaintiffs for their Splenda product . . . ." The Order further required that Merisant "immediately recall from distribution" and "remove . . . from store shelves in Puerto Rico" the infringing products. A copy of Judge Garcia-Gregory's Order for Preliminary Injunction is attached hereto as Exhibit D.

In addition to this Order, Judge Garcia-Gregory issued the same day a thorough, 66-page opinion entitled Memorandum, Findings of Fact and Conclusions of Law Granting Preliminary Relief ("Opinion"). A copy of the Opinion is attached hereto as Exhibit E. The Opinion described in detail the market for no-calorie sweeteners in the United States, including the major products, their ingredients, and the packaging in which they are sold. *See* Exh. E, ¶¶ 1-7. Among other things, Judge Garcia-Gregory found that Merisant had deliberately copied the

4

Splenda trade dress in order to confuse consumers and increase sales of its competing product. *See id.* ¶¶ 81-86.

The Order and Opinion forced Merisant to expend considerable resources to recall its infringing products from stores in Puerto Rico and to reintroduce "Same" to consumers in new, revised packaging. Merisant then sought revenge.

**B.    Merisant's NAD Challenge**

On or about October 22, 2004, Merisant filed a sweeping challenge to McNeil's packaging and advertising for Splenda with the National Advertising Division of the Council of Better Business Bureaus ("NAD"). Founded in 1971, NAD is a voluntary, industry self-regulatory body whose "mission is to review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." NAD bills itself as a "low-cost alternative to litigation" that "adheres to a strict timetable, providing a written decision within 60 days" after a challenge is commenced. *See* NAD website at www.nadreview.org.

Merisant's NAD challenge took issue with the "made from sugar, tastes like sugar" logo that prominently appears on every Splenda package, and the related advertising slogan, "made from sugar so it tastes like sugar," that appears in every Splenda ad. Merisant alleged that these claims are literally false and/or mislead consumers to believe that Splenda actually contains real sugar (as opposed to a no-calorie sweetener, as the package clearly states), or that Splenda is a "natural" product.

The timing of Merisant's NAD challenge was noteworthy, to say the least. The "made from sugar, tastes like sugar" logo and related claims have been a fixture on all Splenda packaging and advertising since the product was introduced to the U.S. market in 2000. Yet Merisant took no action to challenge these claims during the four-year period that followed. Moreover, the Splenda package – including the "made from sugar, tastes like sugar" logo – had

been scrutinized with a fine tooth comb during the proceedings in the Trade Dress Action on McNeil's motion for a preliminary injunction. *See, e.g.,* Exh. E, Findings of Fact ¶¶ 10 & 17; Conclusions of Law ¶49 (Opinion of Judge Garcia-Gregory, describing Splenda package and noting "made from sugar, tastes like sugar" logo and similar "made with sugar" banner on "Same" package). Merisant did not voice any objection to the logo at the preliminary injunction hearing or at any other time during the Trade Dress Action.

   Merisant's timing strongly suggested to McNeil that Merisant's NAD challenge was filed in retaliation for the preliminary injunction and product recall that McNeil had obtained, and was an abuse of the NAD process. Typically, an NAD challenge concerns a *new* claim for a product that appears in a *new* television commercial or print advertisement. If NAD deems the claim unsubstantiated, the advertiser generally can revise or discontinue the claim without major repercussions for its business. Merisant's NAD challenge, by contrast, was directed at packaging and advertising claims that have helped define the Splenda brand since its introduction. An adverse ruling by NAD could have required McNeil promptly to alter its longstanding claims, potentially disrupting McNeil's business and damaging McNeil's thriving Splenda franchise.

   McNeil frequently participates in NAD proceedings, both as a challenger and as an advertiser, and is a strong supporter of the NAD self-regulatory process. However, McNeil believed that Merisant's challenge – coming as it did on the heels of McNeil's procurement of a preliminary injunction and product recall against Merisant – was retaliatory in nature. Moreover, McNeil concluded that it was unwilling to forego the procedural and substantive protections accorded to parties in Lanham Act litigation[2] on a claim that, because it was raised so late, posed

---

[2]  NAD rules allow for no discovery, no evidentiary hearing and no confrontation or cross-examination of opposing witnesses. *See* NAD Rules, attached hereto as Exhibit F. Equitable

6

a significant threat to McNeil's business. Accordingly, McNeil declined to subject its Splenda packaging and promotional claims to voluntary NAD review. McNeil's letter requesting that NAD close Merisant's challenge on an administrative basis is attached hereto as Exhibit G, and NAD's decision closing the case is attached as Exhibit H.

### C.     McNeil's Declaratory Judgment Action

As McNeil recognized at the time, its decision to decline to participate in the NAD proceeding brought by Merisant did not extinguish Merisant's false advertising claims. To the contrary, McNeil predicted – correctly, as it turned out – that Merisant would simply retool its NAD complaint and commence suit against McNeil in federal court, alleging that McNeil had violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Rather than wait indefinitely for Merisant to act, on November 18, 2004, McNeil commenced a declaratory judgment action against Merisant pursuant to 28 U.S.C. § 2201, seeking a declaration that McNeil's packaging and advertising for Splenda are neither false nor misleading, and do not violate the Lanham Act. McNeil brought its action (the "Declaratory Judgment Action") in the United States District Court for the District of Puerto Rico – the same Court in which the parties were already litigating the Trade Dress Action. A copy of McNeil's Complaint for Declaratory Judgment is attached hereto as Exhibit I.

As required by applicable rules of local practice, McNeil indicated on the civil cover sheet that accompanied its complaint that the Declaratory Judgment Action is related to the Trade Dress Action pending in the same Court before Judge Garcia-Gregory. The Declaratory Judgment Action was randomly assigned to a different judge, but McNeil has moved that it be reassigned to Judge Garcia-Gregory. In its motion McNeil explained that, by virtue of his

---

defenses generally available to litigants in court, such as laches and unclean hands, are not recognized in NAD proceedings.

extensive involvement in the Trade Dress Action, Judge Garcia-Gregory has acquired substantial familiarity with the parties, their products and the no-calorie sweetener category in which they compete. Indeed, Judge Garcia-Gregory has carefully scrutinized the packaging in which the products are sold, including the Splenda package on which the "made from sugar, tastes like sugar" logo appears. Accordingly, both the parties' interest in efficiency and the judiciary's interest in economy are served by allowing Judge Garcia-Gregory to adjudicate McNeil's declaratory judgment claims. A copy of McNeil's brief in support of its motion to reassign the Declaratory Judgment Action to Judge Garcia-Gregory is attached as Exhibit J.

In addition, Judge Garcia-Gregory is in the best position to rule on whether Merisant's claims against McNeil are barred in whole or part by the equitable doctrine of unclean hands. *See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (doctrine of unclean hands is applicable in Lanham Act cases). McNeil believes that Merisant's egregious copying of the Splenda trade dress in violation of the Lanham Act, as found by Judge Garcia-Gregory, precludes Merisant from seeking equitable relief against McNeil's claims on the Splenda package. Judge Garcia-Gregory has already heard and considered the evidence upon which the finding against Merisant of purposeful trade dress infringement was based. Judge Garcia-Gregory is therefore best positioned to determine whether Merisant is barred from pursuing the claims it now wishes to press against McNeil.

In fact, the testimony presented to Judge Garcia-Gregory at the hearing on McNeil's motion for a preliminary injunction goes directly to the *bona fides* of Merisant's claims in this case. The "Same" product at issue in the Trade Dress Action bore a logo similar to the Splenda "made from sugar, tastes like sugar" logo: "MADE WITH SUGAR." "Same" contains an artificial sweetener (the one found in Equal and many other products) but is "bulked" with real

sugar, as opposed to dextrose and maltodextrine, ingredients that are commonly used as bulking agents for artificial sweeteners. The sugar in "Same" offers no benefit – consumers cannot taste the sugar because its flavor is overwhelmed by the powerful artificial sweetener in the product. Nevertheless, Merisant promotes the fact that the product is made with real sugar.

At the evidentiary hearing on McNeil's motion for a preliminary injunction, Merisant's witness laid bare the reason why Merisant chose to include sugar in its "Same" product. Francisco Javier Cuervo-Escalona, vice president and general manager for Merisant Latin America, testified that Merisant used real sugar so that consumers would believe that "Same" was more "natural" than other artificial sweeteners. Mr. Cuervo-Escalona explained that, by including real sugar, Merisant hoped to create "an image of more naturalness." *See* Exh. C (Transcript of March 2, 2004 Hearing) at 17:25; *see also id*. at 15:3-5, 16:5-7,18:1-7, 20:8-14, 27:13-17, 51:10-22. In other words, Merisant has *admitted* the very offense of which it now claims McNeil is guilty: misleading consumers to think that its artificial sweetener is "natural." Having purposefully (and admittedly) deceived consumers in this fashion, Merisant should not be heard to complain about an implied claim of "naturalness" in McNeil's packaging and advertising. As noted above, Judge Garcia-Gregory, who heard and is already familiar with this testimony, is best situated to judge its impact on Merisant's current false advertising claims.

### D. The Instant Action

Unhappy with the prospect of litigating its Lanham Act case before a judge already familiar with its shenanigans, Merisant filed this action (the "Second Filed Action") on November 26, 2004 – more than a week *after* McNeil's Declaratory Judgment Action was filed.

9

Merisant's complaint (Exh. A) asserts the very same Lanham Act claims that are the subject of McNeil's Declaratory Judgment Action.[3]

## ARGUMENT

McNeil's Declaratory Judgment Action and Merisant's Second Filed Action involve identical parties and identical issues.  Because the Declaratory Judgment Action was filed first, this Court should dismiss or stay the Second Filed Action, or transfer it to the Court where the Declaratory Judgment Action is pending – the United States District Court for the District of Puerto Rico.

### I.     The First-Filed Rule

It is settled law in this Circuit that, in "all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (citation omitted); *see Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941) (adopting the "first-filed rule").  Thus, when two cases involving the same parties and issues are pending in two federal courts, the court in which the second-filed case is pending may dismiss the action, enter a stay pending resolution of the first-filed action, or transfer the case to the court where the first case was filed.[4]  *See, e.g., Stone Creek Mechanical, Inc. v. Carnes Co., Inc.*, No. 02-cv-1907, 2002 WL 31424390 (E.D. Pa. Oct. 25, 2002) (dismissing case pursuant to the first-filed rule), *Servian v. Health Data Sciences Corp.*, No. 92-2693, 1992 WL 174705 (E.D. Pa. July 21, 1992) (same) and *Transamerica Ins. Co. v. T.V. Spano Building Corp.*, No. 90-2836, 1990 WL 106588 (E.D. Pa. July 24, 1990)

---

[3]     Merisant's complaint also includes an unfair competition claim under Pennsylvania common law that is based on the same facts as its Lanham Act claim.

[4]     The first-filed rule also empowers the court in which the first-filed case is pending to enjoin prosecution of proceedings in the court in which the second-filed case is pending.  *EEOC*, 850 F.2d at 971.

(same); *RJF Holdings III, Inc. v. Refractec, Inc.*, No. 03-1600, 2003 WL 22794987 (E.D. Pa. Nov. 24, 2003) (staying case pursuant to the first-filed rule) and *Federal Ins. Co. v. W.N. Stevenson Co.*, No. 90-5078, 1990 WL 171524 (E.D. Pa. Nov. 1, 1990) (same); *New View Gifts & Accessories, Ltd. v. Tri-Coastal Design Group*, No. 02-cv-3428, 2002 WL 1896217 (E.D. Pa. Aug. 15, 2002) (transferring case pursuant to the first-filed rule), *Communication Workers of America v. AT&T Paradyne Corp.*, No. 92-7430, 1993 WL 76214 (E.D. Pa. March 16, 1993) (same), *and Peregrine Corp. v. Peregrine Industries, Inc.*, 769 F. Supp. 169 (E.D. Pa. 1991) (same).

Although application of the first-file rule is discretionary, it is strongly favored. The Court of Appeals has directed District Courts to depart from the rule only in the face of "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *EEOC*, 850 F.2d at 972.

The first-filed rule is supported by several important policy considerations. First, the rule "promotes comity among federal courts of equal rank" and "prevent[s] the judicial embarrassment of conflicting judgments." *EEOC*, 850 F.2d at 971 & 977. Second, the rule protects the right of the party who first initiates a lawsuit to "be free from the vexation of subsequent litigation over the same subject matter." *Crosley*, 122 F.2d at 930.

The first-filed rule also promotes judicial economy by avoiding duplicative efforts by multiple courts. This rationale for the rule, as articulated by the Court of Appeals more than half a century ago, is even more pertinent today than it was then:

> The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of

11

>           judicial time and energy.  Courts already heavily burdened with
>           litigation with which they must of necessity deal should therefore
>           not be called upon to duplicate each other's work in cases
>           involving the same issues and the same parties.

*Id.*

## II.     The First-Filed Rule Is Applicable Here

This case is precisely the type for which the first-filed rule was created.  The parties involved in this Second Filed Action are identical to those in the Declaratory Judgment Action, which was filed first.  *See* Exhs. A and I and n. 1.  The issues raised by the two actions are the same.[5]  Merisant's only purpose for bringing the Second Filed Action was to escape the jurisdiction of the Puerto Rico court – in other words, to forum shop.  In circumstances such as these, courts in this District have not hesitated to dismiss, stay or transfer the second-filed action. *See, e.g., RJF Holdings*, 2003 WL 22794987 at *5 (staying patent infringement case pending resolution of a declaratory judgment action involving the same parties and issues that had been filed in the Central District of California); *Servian*, 1992 WL 174705 at *3 (dismissing a suit involving the issue of plaintiff's right to sales commissions in favor of a declaratory judgment action defendant had filed in the Southern District of California that involved the same issue); *Peregrine Corp.*, 769 F. Supp. at 174 (transferring a trademark infringement action to the Central District of California, where a declaratory judgment action involving the same parties and issues was pending).  This Court should do the same.

---

[5] Indeed, all of the claims Merisant brings here are compulsory counterclaims in the Declaratory Judgment Action.  *See, e.g., RJF Holdings*, 2003 WL 22794987 at *2 n.1 *and Zelenofske*, 1999 WL 592399 at *2 & n.1 (discussing the relationship between the first-filed rule and FED. R. CIV. P. 13(a)).

**III.     There Is No Basis For this Court To Depart from the First-Filed Rule**

This motion surely comes as no surprise to Merisant, which must have realized that its Second Filed Action was likely to be dismissed under this Circuit's first-filed rule. For this reason, Merisant incorporated into its complaint a number of allegations – many of them false – aimed at persuading this Court to depart from the first-filed rule and to allow Merisant's Second Filed Action to take precedence over McNeil's. None of the arguments hinted at in Merisant's complaint, or subsequently raised by Merisant,[6] has merit.

**A.     McNeil Has Not Engaged In "Forum Shopping"**

Merisant alleges that "McNeil's filing of an anticipatory action in Puerto Rico is nothing more than a bad-faith attempt at forum-shopping." Exh. A ¶ 46. The mere fact that McNeil filed a declaratory judgment action in anticipation of an affirmative lawsuit by Merisant does not mean that McNeil "forum-shopped" in a way that requires a departure from the first-filed rule. Indeed, if that were the case, the rule would *never* apply to a declaratory judgment action commenced prior to the filing of an affirmative action on the same claims. As noted above, courts in this Circuit routinely apply the first-filed rule to actions for declaratory judgment, allowing them to take precedence over subsequently filed affirmative actions on the same claims. *See, e.g., IMS Health, Inc. v. Vality Technology, Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa. 1999) ("a district court cannot dismiss a proper declaratory judgment action merely because affirmative litigation is subsequently commenced elsewhere"); *Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson*, No. 99-3508, 1999 WL 592399 at *2 (E.D. Pa. Aug. 5, 1999) ("Even where the first-filed action is one for a declaratory judgment . . . the first-filed rule applies") (citing *Crosley*, 122 F.2d at 476); *Uti Corp. v. Plating Resources, Inc.*, No. 99-253,

---

[6]     On December 13, 2004, Merisant moved to dismiss McNeil's Declaratory Judgment Action on a variety of theories, including the ones alluded to in its complaint in this Court. McNeil has not yet responded to Merisant's motion, and no date for argument has been set.

1999 WL 286441 at *8 (E.D. Pa. May 7, 1999) ("The first-filed rule has . . . routinely been applied to cases where the first-filed case is an action for declaratory judgment"); *The Pep Boys – Manny, Moe & Jack v. American Waste Oil Services Corp.*, No. 96-cv-7098, 1997 WL 367048 at *6 (E.D. Pa. June 25, 1997) (same); *Fundamental Too, Ltd. v. Universal Music Group, Inc., MCA, Inc.*, No. 97-1595, 1997 WL 181255 at *5 (E.D. Pa. April 10, 1997) ("If there is to be more than an illusion that a federal forum is to be available for a declaratory judgment plaintiff, the doors to the courthouse must at some point be opened and remain open"); *Fischer & Porter Co. v. Moorco Intern Inc.*, 869 F. Supp. 323, 325 (E.D. Pa. 1994) ("The first-filed rule has routinely been applied when the first-filed suit is an action for declaratory judgment").

Rather, to establish improper "forum shopping," there must be a showing that the plaintiff filed suit in a particular forum solely to avail itself of favorable law in that district, or to avoid unfavorable law in another. *See, e.g., EEOC*, 850 F.2d at 978 (finding that exception to the first-filed rule was warranted because first filer chose the district in which it filed in order to evade a decision in its home district, where the second filer was likely to sue, that was unfavorable to its position); *Kim v. Kim*, 324 F. Supp. 2d 628, 636 (E.D. Pa. 2004) (finding that no exception to the first-filed rule was warranted because, as first filers did not choose their forum to avoid unhelpful law or benefit from favorable law, there was no evidence that forum-shopping motivated first filing); *Stone Creek Mechanical*, 2002 WL 31424390 at *3 (citation omitted) ("forum shopping is seeking out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another"); *Zelenkofske*, 1999 WL 592399 at *3 (same); *Servian*, 1992 WL 174705 at *2 ("Courts which have held that a party's forum shopping permits exception to the 'first-filed' rule have done so primarily based on

the determination that such actions were filed in order to avoid the law of an unfavorable forum").

There is no basis for a finding of improper forum shopping here. McNeil's decision to file the Declaratory Judgment Action in the District of Puerto Rico had nothing to do with any difference in Lanham Act law in the Third Circuit as opposed to the First Circuit. Rather, as explained in detail above, McNeil chose Puerto Rico because the parties were already engaged in Lanham Act litigation in that District, and because Judge Garcia-Gregory is already closely familiar with the products and packaging at issue and with Merisant's adjudicated efforts to deceive purchasers of no-calorie sweeteners. "[T]o justify a disregard of the first-filed rule, forum shopping must be the sole reason for choosing one forum over another and thus will rarely be found where the first action was filed in a logical place." *Zelenkofske*, 1999 WL 592399 at *3. McNeil's selection of Puerto Rico as the forum for this dispute was certainly "logical" and cannot support a departure from the first-filed rule.

In truth, the only party guilty of "forum shopping" here is Merisant. After all, it is Merisant that commenced this Second Filed Action for the sole reason that it does not wish to litigate its Lanham Act claims in the forum selected by McNeil – a forum that Merisant must believe will be less sympathetic to its claims. That is hardly a basis to depart from the first-filed rule.

### B. Merisant's NAD Filing Is Irrelevant

Merisant also suggests that it is the true "first filer" here because it commenced an NAD challenge to McNeil's packaging and advertising before McNeil brought suit for declaratory judgment. The first-filed rule promotes comity among federal courts of equal rank.

15

Needless to say, the NAD – a voluntary, non-judicial forum with no power to compel participation in its proceedings – is not a forum with rank equal to a United States District Court.

Merisant could have invoked the compulsory process of this Court and brought suit against McNeil in the first instance, but it did not do so.  Instead it waited four years to challenge the Splenda packaging and related advertising claims, and then attempted to have its claims heard on an expedited basis by NAD, affording McNeil no opportunity for discovery and depriving McNeil of important substantive defenses such as laches and unclean hands.  Indeed, Merisant went to NAD to try to obtain a speedy ruling that, in view of its unconscionable delay, it knew it could never achieve in court.  By doing so, Merisant took a calculated risk that McNeil would bring a declaratory judgment action, and forfeited the opportunity to be the "first filer" and select the judicial forum for this dispute.  If anything, Merisant's NAD filing weighs in favor of application of the first-filed rule and dismissal of its Second Filed Action.

### C. "Convenience" Is Not the Test

Finally, Merisant suggests that the Second Filed Action should proceed instead of the Declaratory Judgment Action because Pennsylvania is a more convenient forum than Puerto Rico for the parties and potential third-party witnesses.  Questions of *convenience* would be relevant if McNeil had moved to transfer venue pursuant to 28 U.S.C. § 1404(a); they are not relevant to the question of whether an exception to the first-filed rule – a principle of *comity* – is warranted.  *See, e.g., Communication Workers of America*, 1993 WL 76214 at *2 ("the mere fact that the second filed suit may have been filed in a more appropriate forum does not favor proceeding with the second action"); *Servian*, 1992 WL 174705 at *2 ("considerations affecting a court's ruling on a motion to transfer are distinct from those relied upon when deciding whether to dismiss an action based on the 'first filed' rule"); *Transamerica Ins. Co.*, 1990 WL

16

106588 at *2 ("arguments . . . regarding relative convenience of witnesses [are appropriate] . . . to a motion to transfer venue under 28 U.S.C. §1404(a)" rather than a motion to dismiss, stay or transfer pursuant to the first-filed rule).

In any event, Merisant's "convenience" arguments are significantly overstated. Merisant's Lanham Act claims will turn largely on testimony of expert witnesses, who (1) will have their depositions taken in a mutually convenient location, and (2) will have to travel regardless of where the trial is held. The same is true of Merisant's witnesses, who are located in Illinois, and of potential third party witnesses. The only party who will suffer any noticeable inconvenience is McNeil, who will have to transport its witnesses from Pennsylvania to Puerto Rico for trial. Any inconvenience associated with such travel is more than offset by the efficiencies of having all the current packaging and advertising disputes between these parties adjudicated by a single United States District Judge – Judge Garcia-Gregory of the United States District Court for the District of Puerto Rico – who is already familiar with the issues.

**CONCLUSION**

This Second Filed Action is precisely the type of case the first-filed rule was intended to eliminate. McNeil respectfully requests that this Court dismiss Merisant's complaint, or enter a stay pending resolution of the Declaratory Judgment Action, or transfer this case to the District of Puerto Rico.

Dated:   December 21, 2004

                           Respectfully submitted,

                           Steven A. Zalesin
                           Richard J. McCormick
                           Jennifer L. Higgins
                           PATTERSON, BELKNAP, WEBB & TYLER LLP
                           1133 Avenue of the Americas
                           New York, New York  10036-6710
                           (212) 336-2000

                           and

                           Drinker Biddle & Reath LLP
                           One Logan Square
                           18th and Cherry Streets
                           Philadelphia, Pennsylvania 19103-6996
                           (215) 988-2700


                           By: /s Alfred W. Putnam, Jr,
                                    Alfred W. Putnam, Jr.

Of Counsel:

    Donna Malin, Esq.
    Johnson & Johnson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――x
:
MERISANT COMPANY,               :
:
Plaintiff,   :
:   Civil Action No. 04-cv-5504
v.       :
:   Judge Gene E.K. Pratter
McNEIL NUTRITIONALS, LLC and    :
McNEIL-PPC, INC.,               :
:
Defendants.  :
:
―――――――――――――――――――――x

## CERTIFICATE OF SERVICE

The following papers:

**CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, STAY OR TRANSFER**

was served on counsel for Merisant Company:

Abraham C. Reich
FOX ROTHSCHILD LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291
(Hand-Delivery)

Gregg F. LoCascio
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW
Washington, D.C. 20005
(Federal Express)

on the date shown below.

/s David J. Kessler
David J. Kessler

Date:   December 21, 2004